## UNITED STATES v. STUPPIELLO.

(District Court, W. D. New York. September 10, 1919.)

1. ALIENS ⊜⟶46—EXCLUSION OF IMMIGRANTS—"ANARCHISTS."

The word "anarchist," as used in the immigration statutes, includes, not only persons who advocate the overthrow of organized government by force, but also those who believe in the absence of government as a political ideal, and seek the same end through propaganda.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anarchist.]

2. ALIENS ⊜⟶71½, New, vol. 7 Key-No. Series—NATURALIZATION—CANCELLATION OF CERTIFICATE.

The certificate of citizenship of a naturalized citizen *held* subject to cancellation at suit of the United States, on the ground that he was an anarchist when it was issued, and procured it by fraud and in violation of Act June 29, 1906, § 7 (Comp. St. § 4363).

Suit to cancel naturalization certificate by the United States against Michael Stuppiello, also known as Michael Stubbello. Decree for the United States.

Leroy N. Kilman, of Buffalo, N. Y., for the United States.
James W. Kelly, of Rochester, N. Y., for defendant.

HAZEL, District Judge. The defendant, Michael Stuppiello, also known as Michael Stubbello, a cobbler by trade, was born in Italy in the year 1886, and came to this country on May 18, 1900, locating in Rochester, where he has ever since resided. He married an American, and has two children born in this country. He declared his intention to become an American citizen July 21, 1909, and thereafter, on March 6, 1915, having filed his application for citizenship, was duly naturalized. In his declaration of intention and petition for naturalization he stated that he was not an anarchist nor opposed to organized government, and that he was attached to the principles of the Constitution. In May, 1918, he was arrested by the Bureau of Immigration on a warrant charging him with being an anarchist. Upon his examination he testified:

"Q. Do you believe in our form of government, the government of the United States? A. No.
"Q. Do you believe in anarchy? A. Yes.
"Q. How long have you held this belief? A. Six or seven years."

Upon testifying that he was a naturalized American citizen, he was released from custody, and this action to cancel his certificate of naturalization on the ground of fraud was instituted.

[1] At the time defendant was naturalized, indeed since March 3, 1903, section 2 of the Immigration Act of March 3, 1903 (32 Stat. 1213, c. 1012), in enumerating the excluded classes, included aliens who are "anarchists, or persons who believe in or advocate the overthrow by force or violence of the government of the United States or of all government or of all forms of law, or the assassination of public officials." The latter phrase is not, in my opinion, used as the

equivalent of the word "anarchists," but the disjunctive "or" is believed to signify that either one or the other—i. e., an anarchist or one who believes in or advocates the overthrow of the government by force or violence—is of the excluded class; and under section 38 any person who disbelieves in or who is opposed to all organized government may be refused entry into the United States.

On October 16, 1918, Congress passed a law (40 Stat. 1012, c. 186) providing for the exclusion of aliens "who are anarchists, * * * or are opposed to organized government," and under section 2 of the same act any alien who after entering the United States becomes a member of such classes becomes subject to deportation. No question is raised as to the retrospective character of such provisions, and it is believed that none could be. Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066. Regardless of such provisions, however, the Naturalization Act of June 29, 1906 (34 Stat. 596, c. 3592), in terms provides that no person who disbelieves in or is opposed to organized government shall be naturalized or be made a citizen of the United States, and that in his declaration of intention to become a citizen an alien shall state that he is not an anarchist, and shall show to the satisfaction of the court admitting him to citizenship that he is attached to the principles of the Constitution of the United States.

At the trial the defendant frankly admitted that he was an anarchist, coupling his admission with the statement that he did not believe in the use of force or violence for the overthrow of the government, but simply believed in philosophical anarchy—anarchy tantamount to that entertained by political philosophers—or, as he puts it, in "evolution by education, in order to reach a state of education of mind that it won't be necessary to have a government." He limited his definition of an anarchist to a person who believed in violence or the destruction of the government by force of arms. Although he testified before the Bureau of Immigration that he did not believe in the form of government of the United States, he now modifies such testimony by stating that he believes it necessary to have a government as society is at present organized. He was uncertain as to whether or not he entertained such views at the time of his naturalization, but finally admitted having them for about five, six, or seven years.

If the defendant had declared on the hearing of his application for citizenship that he was a philosophical anarchist, as distinguished from a dynamic or or nihilistic anarchist, or one who believes in destroying the government by violence, and a disbeliever in organized government as now constituted, it is inconceivable that his application would have been granted. In a popular sense, it is true, an anarchist is regarded as one who seeks to overturn by violence all constituted forms of society and government, including all law and order and all rights of property, without intending to establish any other system of order in place of that destroyed. Century Dictionary. Yet the word is also defined as one who advocates the absence of government as a political ideal—a believer in an anarchic theory of society. In using the word "anarchists" without qualification Congress intended

to include all aliens who had in mind a theory of anarchy, or the absence of all direct government, in opposition to that of organized government. The former is diametrically opposed to the latter, and the philosophical anarchist who exploits and expounds his views is none the less dangerous to the welfare of the country than the anarchist who believes in overthrowing or destroying the government by force or violence. The means of accomplishing the end, though different, are both destructive; one consisting of insidious propaganda to arouse sentiment in opposition to the government, and the other to incite violence and disorder. Both are designed to discredit constituted authority. As recently stated by Judge Knox in Re Frank R. Lopez (opinion unreported)[1]:

"The theory of anarchy and that of government must at all times be in conflict, and I cannot believe that the philosophical anarchist, at least so far as his ultimate purpose is concerned, is any less dangerous than is the advocate of violence. Indeed, in a sense the insidious character of the teachings of the one is more to be feared than are the teachings or activities of the other. It may be that I am lacking in liberality of thought, but I am unable to divorce my mind from the idea that the doctrinnaire, who spreads his doctrine that all forms of government as we know them shall be subverted to a so-called citizenizing of the world, is an anarchist, and as such comes within both the terms and spirit of the act of Congress upon the subject."

To urge that the defendant in his testimony implied only disbelief in government as at present organized, and that society ultimately would be benefited by the absence of government, does not relieve him, since, as before pointed out, a disbeliever in organized government is barred, I think, from the privilege of naturalization, regardless of whether or not he is also an anarchist of any kind. Congress, in conferring naturalization rights upon aliens, bestowed on them a boon or privilege only to be acquired by compliance with the conditions expressed in the statutes.

In the case of Turner v. Williams, 194 U. S. 279, 24 Sup. Ct. 719, 48 L. Ed. 979, the Supreme Court had before it the question of whether an anarchist could be deported after having unlawfully entered the country. It was contended that Turner, an admitted anarchist, was merely a believer in the absence of government as a political ideal—that, in short, he was a philosophical anarchist—and did not come within the word "anarchists" as used in the statute. The Supreme Court declined to disturb the conclusion of the Board of Immigration as to the fact that the relator was an anarchist, and as to the classification of anarchists Chief Justice Fuller said:

"If the word 'anarchists' should be interpreted as including aliens whose anarchistic views are professed as those of political philosophers innocent of evil intent, it would follow that Congress was of opinion that the tendency of the general exploitation of such views is so dangerous to the public weal that aliens who hold and advocate them would be undesirable additions to our population, whether permanently or temporarily, whether many or few, and, in the light of previous decisions, the act, even in this aspect, would not be unconstitutional, or as applicable to any alien who is opposed to all organized government."

[1] Appealed to Circuit Court of Appeals. For opinion on appeal, see Lopez v. Howe, 259 Fed. 401.

In a concurring opinion by Mr. Justice Brewer it is substantially stated that, since the relator had not given any evidence to negative the finding of the Board of Immigration, it was unnecessary to consider what rights he would have if he were only a philosophical anarchist, or one who held and expressed the opinion that all government was a mistake and society benefited by its absence. It will be observed that the Supreme Court does not undertake to interpret the statute under consideration, since it was not necessary to do so.

In this case I am unable to conclude from the evidence in its entirety that the defendant merely gave expression to the opinion that all government was a mistake, or that he was a harmless, optimistic dreamer, possessed of Utopian ideas, since his admissions before the Bureau of Immigration show him to be interested in anarchistic propaganda movements, not only during the war, but presumably to some extent at least at the present time. Such philosophical anarchism as he professes is fully as dangerous as the anarchism of one who advocates violence to bring about a state of society without a government. It tends to create a spirit of unrest and dissatisfaction among our population, which is inimical to organized government and subversive of law and authority.

It is argued that the defendant has shown himself to be a believer in a so-called systematic form of government, "a government in which they may educate society what should be done for the benefit of all"; but any such testimony does not negative his asseverations that he does not believe in organized government, under which the present social order is maintained.

The certificate of citizenship issued to the defendant should be canceled, on the ground that at the time of its procuration he was an alien anarchist, and an alien who disbelieves in and is opposed to organized government.

A decree may be entered.